UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JAMES BLAU #214995,                          Case No. 2:18-cv-00127

     Plaintiff,              Hon. Gordon J. Quist
           U.S. District Judge

 v.

GERALD COVERT, et al.,

     Defendants.
_____/

## REPORT AND RECOMMENDATION

### I.  Introduction

State prisoner James Blau filed this civil rights action pursuant to 42 U.S.C. § 1983 on August 8, 2018.  Blau says that while he was confined at Chippewa Correctional Facility (URF) in 2016, the Defendants were deliberately indifferent to his serious medical condition, resulting in a failure to timely diagnose him with heart disease in violation of the Eighth Amendment.

The Defendants in the case are Registered Nurse (RN) Gerald Covert, RN Tiffany Haske, RN Joseph Damron, and Nurse Practitioner (NP) Susan Wilson.

This report and recommendation addresses two summary judgment motions and a motion to strike a sur-reply that Blau filed.

**First**, on July 8, 2019, NP Susan Wilson filed a motion for summary judgment. (ECF No. 30.)  She argues (1) that Blau has failed to provide any verifying medical evidence that establishes that her actions had a detrimental effect on Blau or resulted in harm to him, (2) that this case really only involves differences in judgment between an

1

inmate and prison medical personnel, thus entitling Wilson to summary judgment on the merits of Blau's deliberate indifference claim, and (3) that Blau failed to properly exhaust all administrative remedies regarding his claims against her.[1]

**<u>Second</u>**, on July 17, 2019, Defendants RN Covert, RN Haske, and RN Damron filed a motion for summary judgment.  (ECF No. 31.)  They only argue that Blau failed to properly exhaust all administrative remedies regarding his claims against them.

On July 29, 2019, Blau filed a response to RNs Covert, Haske, and Damron's motion.  (ECF No. 35.)  He argues that his claims were either properly exhausted by the grievances he filed with MDOC or that there is a genuine issue of fact regarding whether the grievance process was available to him under *Ross v. Blake*. 136 S. Ct. 1850 (2016).

And on August 8, 2019, Blau filed a response to Wilson's motion.  (ECF No. 38.) In addition, on August 23, 2019, Blau filed a sur-reply requesting that the Court take judicial notice of alleged medical facts, and that the "Court deny all Defendants' motions to dismiss.  (ECF No. 42., PageID.509-512.)  In response to Wilson's motion, Blau argues that a reasonable trier of fact could find that Wilson was deliberately indifferent to the symptoms of heart disease he was suffering from when they met on

---

[1]    This report and recommendation does not address NP Wilson's exhaustion arguments because, as shown below, the undersigned respectfully recommends that the Court (1) find NP Wilson's arguments on the merits successful and (2) dismiss Blau's Eighth Amendment deliberate indifference claim against NP Wilson with prejudice.  However, if the Court were to reject her motion for summary judgement, the undersigned will take up the exhaustion argument.

April 12, 2016.  In making his argument, he requests that the Court take judicial notice of articles discussing the symptoms of an angina, a form of coronary artery disease.

Wilson has filed a motion to strike Blau's sur-reply because it violates the Court's Local Rule 7.2(c).  (ECF No. 43.)  In response, Blau renews his request for the Court to take judicial notice of facts regarding the symptoms of an angina.  (ECF No. 45.)

The undersigned rejects both of Blau's requests for the Court to take judicial notice.[2]  In doing so, the articles and other facts regarding anginas provided by Blau are interpreted as testimonial opinions and not evidence on which a motion for summary judgment may be decided.  *See* Fed. R. Civ. P. 56(c).

The undersigned concludes that (1) there is no genuine issue of material fact that establishes an Eighth Amendment deliberate indifference claim against NP Wilson, (2) there is no genuine issue of material fact that he properly exhaust his Eighth Amendment deliberate indifference claims against RNs Haske and Damron

---

[2]     A federal court may take judicial notice of adjudicative facts when the facts are "not subject to reasonable dispute because [they]: (1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Moreover, "[j]udicial notice is only appropriate if 'the matter [is] beyond reasonable controversy.... The rule proceeds upon the theory that ... dispensing with traditional methods of proof [should only occur] in clear cases.'" *United States v. Ferguson*, 681 F.3d 826, 834 (6th Cir. 2012) (quoting Fed. R. Evid. 201(b) advisory committee's note).  The facts proposed by Blau do not present such a clear case as articulated in *Ferguson*. 681 F.3d at 834.  Indeed, Blau's medical records indicate that there was a period where it was difficult to for medical staff to determine that he was suffering from any heart issues.  (*See* ECF No. 30-2.)

because he failed to name them during the grievance process, and (3) there is a genuine issue of fact regarding whether the grievance process was available to Blau for his claim against RN Covert.

Thus, the undersigned respectfully recommends that the Court (1) grant Wilson's summary judgment motion, (2) deny Defendants' motion as to RN Covert and grant the motion as to RNs Haske and Damron, (3) grant NP Wilson's motion to strike Blau's unauthorized sur-reply, (4) dismiss Blau's claim against NP Wilson with prejudice, and (5) dismiss Blau's claims against RNs Haske and Damron without prejudice.

## II.    Additional Relevant Procedural History

This case was initially referred to the Prisoner Early Mediation program, but failed to settle.  (ECF No. 6, 8, 13.)  The Court issued a case management order (CMO) on April 16, 2019.  (ECF No. 17.)  The CMO set a deadline of August 14, 2019 for the close of discovery, and a September 11, 2019 deadline for dispositive motions.

## III.   Summary of Plaintiff's Claims and the Factual Allegations Supporting His Claims

Blau's numerous Eighth Amendment deliberate indifference claims flow from his perceived lack of medical treatment regarding cardiac issues at URF in 2016. Below is a table that summarizes each of Blau's claims against each Defendant and the alleged facts supporting the claims.

| Claim # | Defendant | Claim | Date or Date Range of Incident(s) | Factual Allegation |
|---|---|---|---|---|
| 1 | Gerald Covert | 8th Amendment Deliberate Indifference | 3/10/2016 | During a physical examination, Covert allegedly dismissed Blau's symptoms and stated that the symptoms would likely go away if Blau would stop crying about them.  Essentially, Covert allegedly incorrectly underreported Blau's symptoms.  (ECF No. 1, PageID.4.) |
| 2 | Gerald Covert | 8th Amendment Deliberate Indifference | 3/15/2016 | Despite not being called out, Blau approached the med-line window to complain about his severe chest pain. Covert allegedly appeared at the window, stated that he did not care if Blau had a heart attack, ordered Blau away from the window, and failed to report Blau's symptoms to a doctor.  (ECF No. 1, PageID.4-5.) |
| 3 | Gerald Covert | 8th Amendment Deliberate Indifference | 4/8/2016 | During Blau's annual health screening, Covert again allegedly underreported Blau's symptoms that suggested possible cardiac problems.  (ECF No. 1, PageID.5.) |
| 4 | Gerald Covert | 8th Amendment Deliberate Indifference | 4/11/2016 | Two nurses admitted Blau into health services because Blau complained about severe chest pain.  When those nurses asked their supervisor, Covert, about what to do, Covert cursed at Blau and kicked him out of the health services without informing a doctor. (ECF No. 1, PageID.5.) |
| 5 | Gerald Covert | 8th Amendment Deliberate Indifference | 4/13/2016 | Covert called-out Blau to discuss Blau's grievance regarding a lack of medical care. Covert ended the meeting by ordering Blau away and writing Blau a major misconduct ticket for insolence. (ECF No. 1, PageID.6.) |
| 6 | Tiffany Haske | 8th Amendment Deliberate Indifference | 3/16/2016 | During a phone conversation, Haske allegedly asked Blau to come to health services after hearing about the chest pains that he was suffering from. When he arrived, Haske allegedly refused to see him or report his symptoms. (ECF No. 1, PageID.6.) |
| 7 | Tiffany Haske | 8th Amendment Deliberate Indifference | 3/17/2016 | Haske examined Blau and recorded Blau's symptoms.  But Blau alleges that Haske did not record the severity of the symptoms and failed to inform a doctor. (ECF No. 1, PageID.6-7.) |
| 8 | Joseph Damron | 8th Amendment Deliberate Indifference | 3/15/2016 | Damron spoke with Blau about Blau's symptoms at the med-line window, which was interrupted when Covert ordered |

| Claim # | Defendant | Claim | Date or Date Range of Incident(s) | Factual Allegation |
|---------|-----------|-------|-----------------------------------|--------------------|
| | | | | Blau away from the window.  Damron failed to report Blau's symptoms.  (ECF No. 1, PageID.7.) |
| 9 | Joseph Damron | 8th Amendment Deliberate Indifference | 3/31/2016 | The day after writing a grievance regarding a lack of medical care, Damron examined Blau. Damron allegedly under-reported Blau's symptoms, ordered Blau away until the nurse practitioner was ready to see Blau, and never informed a doctor about Blau's symptoms.  (ECF No. 1, PageID.7.) |
| 10 | Joseph Damron | 8th Amendment Deliberate Indifference | 4/2/2016 | During a post-hospital follow-up, Damron again under-reported Blau's symptoms and refused to notify a doctor. (ECF No. 1, PageID.8.) |
| 11 | Susan Wilson | 8th Amendment Deliberate Indifference | 4/12/2016-4/25/2016 | Wilson examined Blau as a follow-up from Blau's visit to the emergency room (ER) two weeks earlier. Wilson ordered Blau to receive an EKG and lab tests, despite Blau requesting a stress test and the doctor from the ER finding that Blau did have a cardiac issue. (ECF No. 1, PageID.8.)<br><br>Wilson relented and submitted his request for a stress test on 4/25/2016. (ECF No. 1, PageID.8-9.) |

## IV.  Summary of Grievances Filed by Blau and Pursued Through Step III

All grievances identified by the parties are summarized in the table below.

| Grievance Number | Defendants Named | Issued Grieved at Step I | Outcome of Grievance | ECF No. 30-4, PageID. |
|------------------|------------------|--------------------------|----------------------|-----------------------|
| URF-16-06-2181-28c | Covert, Wilson, Laplaunt | Various issues, including failure to treat chest pain by Covert and others between February and June 2016; threats from Covert; retaliatory conduct from Covert in response to grievances; destruction of medical kites by Covert | Rejected at Step I as having multiple unrelated issues; rejection upheld through Step III | 212-218 |
| URF-16-04-1386-12e3/28e | None | Was not seen in a timely manner for his medical complaints on March 30, 2016. | Denied at Step I; rejected at Step II for untimeliness; | 219-223 |

| Grievance Number | Defendants Named | Issued Grieved at Step I | Outcome of Grievance | ECF No. 30-4, PageID. |
|---|---|---|---|---|
| | | | rejected at Step III for untimeliness | |
| URF-16-04-1491-28a/28e | None | Failure to treat medical condition and pain on April 7, 2016. | Rejected at Step I as duplicative of URF-16-04-1386-12e3; rejected at Step II for untimeliness; rejection upheld at Step III | 224-228 |
| URF-16-04-1481-28e | None | Charged for a medical co-pay on March 29, 2016 | Rejected at Step I as duplicative of URF-16-04-1423-01g; rejected at Step II for untimeliness; rejection upheld at Step III | 229-233 |
| URF-16-04-1423-01g | None | Charged for a medical co-pay on March 11, 2016 | Denied at Step I; denial upheld through Step III | 234-238 |
| URF-1608-2850-12d3 | None specifically named. All URF Health Care Staff – Doctors and Nurses – and Corizon staff. | Since being transferred to JCF, Blau claims that his medical records do not coincide with all of complaints he filed at URF regarding being denied medical treatment for his heart. | Denied at Step I.<br><br>No record of Blau appealing to Step II.<br><br>Blau's Step III appeal was rejected for failing to comply with MDOC policies but gave the opportunity to refile the appeal. | ECF No. 37, PageID.393-400. |
| JCF-1607-1360-12d2[3] | Unknown. | Unknown. | Unknown. | N/A |

## V.    Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to

---

[3]    Grievance **JCF-1607-1360-12d2** does not appear in the record apart from Blau's discussion of it in his response to Defendants' motion for summary judgment. (ECF No. 35, PageID.324.)

judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## VI.    Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is

inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). In rare circumstances, an administrative remedy will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance [or other administrative] process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement

"afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525.  Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).*  And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 2007 U.S. Dist. LEXIS 81101 at *12.

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on July 9, 2007, superseded on March 18, 2019. Where grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required.  It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff]

failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

However, where other administrative remedies are available, the prisoner is required to exhaust those available remedies prior to filing a federal lawsuit. For example, where an inmate claims that he received a retaliatory false misconduct, whether a Class I misconduct or a Class II or III misconduct[4], the inmate must first raise the issue during the Misconduct Hearing. *Siggers v. Campbell*, 652 F.3d 681, 693-94 (6th Cir. 2011).  If the inmate is claiming to have received a retaliatory Class I misconduct, he or she must then must "file a motion or application for rehearing [of his misconduct conviction] in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order." Mich. Comp. Laws § 791.255(1); *see also Siggers*, 652 F.3d at 693-94.  Alternatively, if the inmate is claiming to have received a retaliatory Class II or III misconduct, he or she must file an appeal based on retaliation.  MDOC PD 03.03.105 ¶¶ UUU-XXX; *see also Jones v. Heyns*, 2014 U.S. Dist. LEXIS 55712 at *13-17 (W.D. Mich. Jan. 28, 2014).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those

---

[4]    Violations of written rules within the MDOC are classified as either Class I, Class II or Class III misconducts. Class I consists of the most severe violations, and Class III consists of the least severe.  While Class I misconducts are considered "major" misconducts and are "subject to all hearing requirements set forth in MCL 791.252", Class II and III misconducts are considered "minor" misconducts and are "subject to all requirements currently set forth in Department Administrative Rules and policy directives for 'minor' misconducts."  MDOC Policy Directive (PD) 03.03.103 ¶ B (eff. date 07/01/18).

rules will not bar that prisoner's subsequent federal lawsuit.  *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010).  The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief.  *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process.").  An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits.  *See id.* at 325.  We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court."  *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[5]

## VII.   NP Wilson's Motion for Summary Judgment

In NP Wilson's motion for summary judgment, she argues that (1) that Blau has failed to provide any verifying medical evidence that establishes that her actions had a detrimental effect on Blau or resulted in harm to him, (2) that this case really only involves differences in judgment between an inmate and prison medical personnel, thus entitling Wilson to summary judgment on the merits of Blau's

---

[5]   In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints."  *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

deliberate indifference claim, and (3) that Blau failed to properly exhaust all administrative remedies regarding his claims against Wilson. (*See* ECF No. 30.)

The undersigned is sympathetic to Blau's situation. It is clear from the record that Blau was suffering severe chest pain. Indeed, he underwent surgery to have a stent inserted. The record also shows that Blau suffered his pain for months and repeatedly sought treatment to have the pain diagnosed. He did, however, receive treatment for his chest pain throughout his months-long ordeal. Nevertheless, the worry and perceived delay is understandably frustrating. But those frustrations do not rise to the level of an Eighth Amendment deliberate indifference claim.

### A. *Applicable Law*

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated

13

under conditions posing a substantial risk of serious harm.  *Id.*  "[A]n inmate who complains that ***delay in medical treatment*** rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed."  *Napier v. Madison Cty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001) (emphasis added, citations omitted).  The Court of Appeals elaborated on the holding in *Napier* in its 2004 ruling in *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890 (6th Cir. 2004), where the Court stated the following:

> *Napier* does not apply to medical care claims where facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers. *Napier* applies where the plaintiff's "deliberate indifference" claim is based on the prison's ***failure to treat a condition adequately***, or where the prisoner's affliction is seemingly minor or non-obvious. In such circumstances, medical proof is necessary to assess whether the delay caused a serious medical injury.

*Blackmore*, 390 F.3d at 898 (emphasis added).  Thus, *Napier* and *Blackmore* provide a framework for assessing a claim of delayed or inadequate care for a non-obvious condition:  A plaintiff making this type of claim must place verifying medical evidence in the record to show the detrimental effect of the delayed or inadequate treatment.

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834).  Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.*  Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial

risk of serious harm exists, and he must also draw the inference." *Id.* at 837.  The

subjective component was recently summarized in *Rhinehart v. Scutt*, 894 F.3d 721

(6th Cir. 2018).  The court of appeals stated the following:

> A doctor's errors in medical judgment or other negligent behavior do not suffice to establish deliberate indifference.  Instead, the plaintiff must show that each defendant acted with a mental state "equivalent to criminal recklessness." This showing requires proof that each defendant "subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk" by failing to take reasonable measures to abate it.

> A plaintiff may rely on circumstantial evidence to prove subjective recklessness: A jury is entitled to "conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." And if a risk is well-documented and circumstances suggest that the official has been exposed to information so that he must have known of the risk, the evidence is sufficient for a jury to find that the official had knowledge.

> But the plaintiff also must present enough evidence from which a jury could conclude that each defendant "so recklessly ignored the risk that he was deliberately indifferent to it."  A doctor is not liable under the Eighth Amendment if he or she provides reasonable treatment, even if the outcome of the treatment is insufficient or even harmful.  A doctor, after all, is bound by the Hippocratic Oath, not applicable to the jailor, and the physician's job is to treat illness, not punish the prisoner. Accordingly, when a claimant challenges the adequacy of an inmate's treatment, "this Court is deferential to the judgments of medical professionals."  That is not to say that a doctor is immune from a deliberate-indifference claim simply because he provided "some treatment for the inmates' medical needs." But there is a high bar that a plaintiff must clear to prove an Eighth Amendment medical-needs claim: The doctor must have "*consciously* expos[ed] the patient to an *excessive* risk of *serious* harm."

*Id.* at 738–39 (6th Cir. 2018) (internal citations omitted).

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment.  *Estelle*, 429 U.S. at 105.  As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind.  Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted).

Differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim.  *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996).  This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering.  *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment."  *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).  If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort

16

law." *Id.*; *Rouster v. Saginaw Cty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell* 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

### B. *Summary of Blau's Relevant Medical History*

From March 10, 2016, to April 10, 2016, Blau was evaluated by several registered nurses, an emergency room (ER) doctor, and a nurse practitioner on approximately eight different occasions regarding chest pains and other related symptoms. (ECF No. 30-2, PageID.116-133.) During most of the consultations, Blau complained that he was suffering from these symptoms. (*Id.*) During every consultation, the medical staff did not find objective evidence of those symptoms. (*Id.*) At the ER on April 2, 2016, the doctor found no abnormalities and suggested that Blau's symptoms were associated with a non-cardiac event. (ECF No. 30-2,

PageID.129.)  The doctor did, however, recommend that Blau undergo a stress test. (*Id*.)

On April 11, 2016, the day before Blau's first consultation with NP Wilson, Blau met with RN Sheri Walker about continued complaints of chest pain. (ECF No. 30-2, PageID.134.)  RN Walker noted Blau was scheduled to see the medical provider and that Blau would be charged for his evaluation that day.  After hearing that he would be charged, Blau replied that he was "good" and refused further evaluation. (*Id*.)

Finally, on April 12, 2016, Blau had his first visit with NP Wilson.  NP Wilson evaluated Blau's concerns of chest pain and shortness of breath and noted his hospitalization with non-cardiac chest pain. NP Wilson noted that his heart rate and rhythm were both regular, and she ordered Zantac, Lactaid, and an EKG. (*Id*., PageID.135-139; ECF No. 30-3, PageID.175.)

On April 13, 2016, a chest x-ray revealed no active pulmonary disease. (ECF No. 30-2, PageID.140.)

On April 15, 2016, Blau underwent an EKG. A few days later the results revealed a Q wave and T wave inversion. (*Id*., PageID.142-143.)

On April 26, 2016, NP Wilson met again with Blau.  (*Id*., PageID.144-147.)  She noted that Blau stopped taking the Zantac because he indicated it did not help.  (*Id*.)  NP Wilson noted that Blau continued to complain of burning and chest pain increases with any activity, including walking.  (*Id*.)  NP Wilson ordered a consultation request

for a cardiolyte stress test.  (*Id*.)  Dr. Papendick approved this request on April 28, 2016. (ECF No. 30-3, PageID.148-149; ECF No. 30-3, PageID.175.)

On May 17, 2016, Blau went to War Memorial Hospital for a stress test.  (ECF No. 30-2, PageID.150-151.)  The results of the stress test included abnormal stress test with a small inferior wall reversible defect. (*Id*.)

On May 24, 2016, NP Wilson reviewed the results of the stress test and scheduled Mr. Blau to see her for a review.  Wilson noted that a cardiac referral was necessary. (ECF No. 30-3, PageID.152-153; ECF No. 30-3, PageID.175.)

On May 27, 2016, Blau met with NP Wilson for review of the stress test results. NP Wilson requested a cardiac follow up and ordered Blau a detail for a bottom bunk. Dr. Papendick approved this request on May 31, 2016.  (Id., PageID.154-160.)  This was the last of NP Wilson's involvement in Blau's medical care. (ECF No. 30-3, PageID.175.)

### C. *Analysis*

It is unclear from Blau's Verified Complaint whether his Eighth Amendment deliberate indifference claim against NP Wilson is based on her April 12, 2016 decision to order Blau diagnostic tests other than a stress test, or her failure to order a stress test until April 25, 2016.  If the former, Blau would be challenging the adequacy of the treatment that he received.  If the latter, Blau would be asserting that he suffered from a delay in treatment.  In either case, Blau must submit verifying medical evidence that establishes a detrimental effect resulting from treatment provided in order to satisfy the objective component. *Blackmore*, 390 F.3d at 897-900.

He must submit the evidence because each form of Eighth Amendment deliberate indifference claims would be based on non-obvious serious risks of harm.  *Id*.

Here, Blau failed to submit any evidence to show how either NP Wilson's April 12, 2016 decision, or her delay in ordering a stress test harmed him.[6]  By failing to submit verifying evidence to show how NP Wilson's decision or delay harmed him, Blau fails to show the existence of a genuine issue of material fact regarding the objective component of his claim.

Blau argues that his symptoms were obvious signs of serious heart disease, that NP Wilson should have been aware of that possible risk of harm, and that her failure to give him a stress test on April 12, 2016 violated his Eighth Amendment rights.  (ECF No.38, PageID.408-412.)  Blau is effectively arguing that his situation does not fall into the *Napier-Blackmore* framework set forth above because his condition was obvious, and, as a result, he did not need to submit verifying evidence.

The undersigned disagrees.  In *Mattox v. Edelman*, 851 F.3d 583 (6th Cir. 2017), a prisoner claimed that a physician assistant (PA) violated his Eighth Amendment rights when the PA ordered the prisoner back to barracks as opposed to the ER.  *Id*. at 583.  The prisoner argued that his documented history of serious cardiac issues and then-current symptoms would likely result in a layperson

---

[6]     The undersigned again acknowledges that Blau submitted various exhibits that discuss anginas.  However, as discussed in the introduction, the Court cannot take judicial notice of those exhibits or other testimonial opinions.  Consequently, these exhibits and testimonial do not meet the requirements of Fed. R. Civ. P. 56(c). Even if those exhibits and testimonial opinions were considered, they do not show how NP Wilson's decision or delay harmed Blau.

determining that he faced a sufficiently serious risk of harm.  *Id*., at 598.  The Sixth Circuit disagreed with the prisoner's "obvious malady" theory.  *Id*.

There, the Court explained that similar plaintiffs "are required to provide objective evidence that [they] needed medical care at the time [they are] experiencing the symptoms."  *Id*.  The plaintiffs are excused "when a [they] can show that [their] need for medical care was so obvious that even a layperson should recognize it."  *Id*. For example, "if a plaintiff has been stabbed . . . he should not require a doctor's diagnosis of internal bleeding before prison staff should be expected to tend to his medical needs."  *Id*.

The seriousness of Blau's risk of harm rests on a theory of obvious malady.  But a full review of the ER doctor's report and Blau's medical consultations between his ER visit and his consultation with NP Wilson do not support a conclusion that an obvious risk of harm existed.

First, the ER doctor who examined Blau on April 2, 2016 found no abnormalities and stated that Blau's chest pain was consistent with a non-cardiac cause.  (ECF No. 30-2, PageID.129.)  Below is a small excerpt of the ER doctor's report.

21

**Progress**
MDM:
Patient's labs, EKG and imaging reviewed. No abnormalities noted.
The patient was given a breathing treatment to see if this may help with his pain. However, the do not have much benefit from this. Patient was also given a GI cocktail and stated the symptoms improved a little, but the pain still persisted.
Findings are consistent with a noncardiac cause of chest pain. However, I recommend the patient have a stress test performed in the outpatient setting.

**Departure**

**Clinical Impression**
Clinical Impression
**Primary Impression:** Chest pain
**Qualifiers: Chest pain type:** unspecified **Qualified Code:** R07.9 - Chest pain, unspecified

(*Id.*)  As shown above, the ER doctor recommended a stress test.

After visiting the ER, two different nurses met with Blau before he met with NP Wilson on April 12, 2016.  First, on April 3, 2016, Blau met with RN Damron. During this visit, Blau said that he was feeling okay and that his chest pain symptoms occurred when he walked long distances.  (ECF No. 30-2, PageID.131.) With that information, RN Damron advised Blau to rest, to not play sports or engage in other physical activity, to increase his water intake, and to eat healthy.  (*Id.*, PageID.132.)

Then, on April 11, 2016, Blau met with RN Walker to request a consultation with the medical provider.  (*Id.*, PageID.134.)  When RN Walker explained the Blau would be charged for the visit, Blau replied "I'm good" and refused further evaluation. (*Id.*)

In short, during the lead-up to Blau's first visit with NP Wilson, Blau saw three medical providers who did not reach the conclusion that Blau was experiencing cardiac problems.  As a result, the undersigned concludes that, pursuant to the *Napier-Blackmore* framework, Blau was required to present evidence verifying that

22

Wilson's treatment of him caused him harm.  He has not done so.  Thus, undersigned concludes that Blau failed to show a genuine issue of fact that would satisfy the objective component.

For the same reasoning underpinning the analysis of the objective component, there is no genuine issue of material fact that establishs the subjective component. Blau needed to present some evidence showing that NP Wilson's mental state was "equivalent to criminal recklessness." *Rhinehart*, 894 F.3d at 738.  To do so, there must be evidence that creates an inference that NP Wilson disregarded Blau's substantial risk of harm "by failing to take reasonable measures to abate it."  *Id*. Stated differently, the questions here are (1) whether NP Wilson was given sufficient facts from which "to infer substantial risk to" Blau, (2) whether she "did in fact draw the inference", and (3) whether she "disregarded that risk by failing to take reasonable measures to abate it." *Rhinehart*, 894 F.3d at 738-39.

Blau has not presented evidence showing a genuine issue of material fact on these issues.  The record shows that, on April 12, 2016, NP Wilson was aware of Blau's emergency room visit, the results from that visit, and the results from Blau's subsequent interactions with MDOC medical staff.  (ECF No. 30-3, PageID.175 (Affidavit of NP Wilson); ECF No. 30-2, PageID.131-139 (Blau's Relevant Medical Records).)  Furthermore, the record shows that NP Wilson treated Blau by ordering him Zantac, Lactaid, an EKG, and an update to his labs.  (ECF No. 30-2, PageID.135-

139.)  Moreover, after the EKG results were available[7], NP Wilson followed-up with Blau and ordered a stress test.  (ECF No. 1, PageID.8-9; ECF No. 30, PageID.107; ECF No. 30-2; PageID.150-151.)

What Blau has shown is a disagreement with a medical provider.  But this is not enough to establish a genuine issue of material fact.  "A disagreement with a course of medical treatment does not rise to the level of a federal constitutional claim under the Eighth Amendment."  *Rhinehart*, 894 F.3d at 744 (citation omitted).

Because the record does not support a finding that NP Wilson possessed the mental state equivalent to criminal recklessness, the undersigned concludes that is no genuine issue of material fact that could satisfy the objective component required for an Eighth Amendment deliberate indifference claim.

## VIII.  RNs Covert, Haske, and Damron's Motion for Summary Judgment[8]

Due to the number of grievances at issue, the different rationales applied by MDOC in rejecting the grievances, and the lack of responsive briefing, the exhaustion analysis is complicated.  In lieu of providing a responsive reply to Blau's arguments,

---

[7]    The EKG indicated an abnormality:  "T wave inversion."  (ECF No. 30-2, PageID.142.)

[8]    With respect to NP Wilson's failure to exhaust argument, the undersigned concludes that Blau specifically named NP Wilson on his appeal to Step II of grievance **URF-16-04-1491-28a/28e** (ECF No. 32-3, PageID.291) and at Step I of grievance **URF-16-06-2181-28c** (*Id.*, PageID.282-283) and that there is a genuine issue of material fact regarding whether the grievance process was available to Blau for those grievances. Therefore, her motion for summary judgment would have be denied on that basis if she had argued the exhaustion alone.

Defendants requests that the Court order a trial regarding triable exhaustion issues.[9]
(ECF No. 40.)

The following table summarizes the undersigned's conclusion regarding Blau's
exhaustion of his administrative remedies via the grievance process.

| Grievance Number | Undersigned's Conclusion |
|---|---|
| URF-16-04-1386-12e3/28e | There is a genuine issue of fact as to whether the grievance process was available to Blau for his allegations against RN Covert.  There is, however, no genuine issue of material fact that Blau failed to properly exhaust any claims against RNs Haske and Damron because he failed to name them during the grievance process. |
| URF-16-04-1491-28a/28e | There is a genuine issue of fact as to whether the grievance process was available to Blau for his allegations against RN Covert.  There is, however, no genuine issue of material fact that Blau failed to properly exhaust any claims against RNs Haske and Damron because he failed to name them during the grievance process. |
| URF-16-06-2181-28c | There is a genuine issue of fact as to whether the grievance process was available to Blau for his allegations against RN Covert.  There is, however, no genuine issue of material fact that Blau failed to properly exhaust any claims against RNs Haske and Damron because he failed to name them during the grievance process. |
| JCF-1607-1360-12d2 | The evidence indicates that this grievance was not properly exhausted, and no genuine issue of material fact remains regarding this grievance. |
| URF-1608-2850-12d3 | There is a genuine issue of material fact as to whether the grievance process was available to Blau. |

### A. Grievance   URF-16-04-1386-12e3/28e   and   URF-16-04-1491-28a/28e

Both grievances are addressed in the same subsection because they have
similar sets of facts that cause there to be a genuine issue of material fact regarding

---

[9]    Defendants, however, have not filed a motion for summary judgment on the
merits and it may appear the much of the same reasoning applied to NP Wilson's
motion would also apply to each remaining Defendant.

whether the grievance process was available to Blau for his claims against RN Covert. *See Ross*, 136 S.Ct. at 1859–60.  As summarized in Section III, grievance **URF-16-04-1386-12e3/28e** was denied at Step I and then rejected at Steps II and III because the appeals were considered untimely.  Grievance **URF-16-04-1491-28a/28e** was rejected at Step I for being duplicative of grievance **URF-16-04-1386-12e3/28e**, rejected at Step II for being untimely, and the rejection was upheld at Step III.

With respect to the rejections based on untimeliness, Defendants argue that MDOC properly rejected the grievances for being untimely because the appeals were received after the Steps II and III appeal deadlines.  (ECF No. 32, PageID.257-259.) Defendants' argument, however, misinterprets MDOC's grievance procedure. Prisoners need only submit their appeals for Steps II and III before the appeals' deadlines; and the prison officials must receive the appeals within ten days after the appeals deadline.  MDOC PD 03.02.130 ¶¶ BB, FF.

Blau argues that the rejections were improper because he filed his grievances in a timely manner.  (ECF No. 35, PageID.314-320.)  In support of his argument, Blau directs the Court's attention to several exhibits.  (*See* ECF No. 35-1, PageID.334-336; ECF No. 32-3, PageID.286, 291.)  After reviewing the documents indicated by Blau, there appears to be an issue of fact as to whether MDOC properly applied it grievance procedure.  As such, the undersigned concludes that there is a genuine issue of fact

as to whether the grievance process was rendered unavailable to Blau.[10]  *See Ross*, 136 S.Ct. at 1859–60.

With respect to grievance **URF-16-04-1386-12e3/28e**, Defendants also argue that the grievance was not properly exhausted because (1) its submission to Step I was untimely in order for Blau to grieve any incident occurring in March 2016 and (2) Blau failed to name RNs Covert, Haske, or Damron at Step I.  (ECF No. 32, PageID.257-258.)  The undersigned concludes that neither argument is successful. The first argument fails because the grievance was denied at Step I and not rejected at Step I for timeliness issues.  Consequently, prison officials waived the enforcement of that procedural rule by considering a non-exhausted claim on its merits.    *Reed-Bey*, 603 F.3d at 325.

The second argument fails as to RN Covert but succeeds as to RNs Haske and Damron.  The PLRA does not impose a "name all defendants requirement" when prisoners file their initial grievances, the administrative review process is designed to "allow[] a prison to address complaints about the program it administers before being subjected to suit."  *Jones*, 549 U.S. at 217, 219.  Blau argues that he provided enough information for grievance investigators to identify the person grieved.  (ECF No. 35, PageID.317-318.)  A review of the grievance and its appeals shows that Blau failed to name RNs Haske and Damron at each Step, but explicitly names RN Covert

---

[10]    Beside Blau's assertions and the affidavits of fellow prisoners, the undersigned found no evidence supporting the argument that URF grievance staff returned responses to grievances five to ten days after the dates listed on the grievance forms. If there is such an unspoken policy, it does not appear to have affected this case.

on appeal to Step III.   (ECF No. 32-3, PageID.286.)   In effect Blau names one Defendant and not the others.  His lack of specificity denied MDOC an opportunity to address any complaints regarding RNs Haske and Damron.  The undersigned, therefore, concludes that there is no genuine issue of fact that Blau failed to properly exhaust his claims against RNs Haske and Damron.

With respect to grievance **URF-16-04-1491-28a/28e**, Defendants also argue that Blau failed to properly exhaust the grievance because (1) it was rejected at Step I for being duplicative of grievance **URF-16-04-1386-12e3/28e** and (2) Blau failed to specifically name the Defendants at Step I.  (ECF No. 32, PageID.258-259.)  Again, both of Defendants' arguments fail.  The first argument fails because a review of both grievances appear to show that MDOC misapplied its grievance procedure to determine that grievance **URF-16-04-1491-28a/28e** (ECF No. 32-3, PageID.293) was duplicative of grievance **URF-16-04-1386-12e3/28e (**ECF No. 32-3, PageID.288).  In both grievances Blau does complains about chest pains and medical staff's failure to treat and diagnose him.  But in grievance **URF-16-04-1491-28a/28e**, Blau complains about MDOC medical staff's failure to treat him after an ER doctor recommended that he receive a stress test.  The difference is significant because Blau did not see the ER doctor until after he filed the first grievance – **URF-16-04-1386-12e3/28e**.  A subsequent grievance complaining about newly occurred facts cannot be duplicative of an earlier grievance.

The second argument fails again as to RN Covert but succeeds as to RNs Haske and Damron.  Identical to the last grievance, Blau specifically names RN Covert on

appeal to Step III and neglects to name RNs Haske and Damron at every Step.  (ECF No. 32-3, PageID.290-294.)

In summary, the undersigned concludes that there is a genuine issue of material fact for both grievances as to whether the grievance process was available to Blau regarding his claims against RN Covert.  The undersigned, however, also concludes that Blau failed to show a genuine issue of material fact as to whether Blau properly exhausted his claims against RNs Haske and Damron because he neglected to name them.

### B. *Grievance URF-16-06-2181-28c*

The analysis regarding this grievance is complicated because there appears to be two ways in which the undersigned can interpret this grievance.  The first interpretation is that MDOC correctly applied its grievance procedure to the grievance, which means that the grievance contains multiple unrelated issues and it was properly rejected at Steps I, II, and III.  The second interpretation is that Blau, citing *McDuff v. Addis*, 2018 WL 3239491 at*2-3 (W.D. Mich. July 3, 2018), is correct in arguing that the issues grieved are related to each other and are related to the Eighth Amendment deliberate indifference claims he alleges in this lawsuit.  If that is so, then MDOC appears to have misapplied its grievance policy to the grievance because it then only contains one issue and the grievance procedure was unavailable to Blau.  *See Ross*, 136 S.Ct. at 1859–60.

A narrow review of the grievance submitted at Step I would show that the grievance contains multiple unrelated issues.  After all, the first paragraph of the

29

grievance contains generally unrelated phrases, like "contractual obligations", "retaliation", "harassment", and "interference with medical treatment." (ECF No. 32-3, PageID.282.)  Moreover, if each incident alleged in the grievance was viewed in isolation, then the grievance does contain multiple unrelated issues.  (*Id.*, PageID.282-283.)

A broader review of the grievance, however, shows that the grievance was intended to memorialize Blau's months-long frustrating endeavor to diagnose and treat the cause of his chest pains.  (*Id.*)  As such, this grievance is akin to the grievance analyzed in *McDuff*. 2018 WL at*2-3.  There, the grievance discussed two separate fights and the grievant receiving a misconduct ticket for each fight.  *Id*.  The Court held that the rejection of the grievance was unreasonable because the four incidents discussed were related to each other and related to the Eighth Amendment deliberate indifference claim that the prisoner alleged.  *Id*.  Accordingly, the undersigned concludes that the second interpretation of this grievance is correct and finds that there is a genuine issue of fact regarding whether the grievance process was available to Blau.  *See Ross*, 136 S.Ct. at 1859–60.

In addition, Defendants argue the grievance is not properly exhausted because (1) this grievance "could have been rejected" on the basis that it is redundant of the prior two grievances and (2) with respect to RNs Haske and Damron, Blau failed to explicitly name them.  Defendants' first argument fails for two different reasons.  First, there is a genuine issue of fact regarding whether the grievance process was available to Blau.  When the grievance process is determined to be unavailable, "[a]

prisoner need not exhaust remedies if they are not 'available.'" *Ross*, 136 S.Ct. at 1855. Consequently, Blau could not comply with the grievance procedures if the process was unavailable.

Second, the first argument fails because MDOC chose to reject the grievance after determining that the grievance contained multiple unrelated issues and not because the grievance was duplicative of an earlier two grievances. Essentially, Defendants – with the benefit of hindsight – ask the Court to apply an alternative procedural requirement to find the grievance properly rejected despite MDOC failing to apply that procedural requirement itself. For the same rational underlying the waiver of procedural requirements in *Reed-Bey*, MDOC waived the enforcement here of the duplicative requirement. 603 F.3d at 325.

With respect to Defendants' argument that Blau failed to name RNs Haske and Damron, Blau asserts that he effectively named the Defendants when he wrote "and unknown staff members" in the first paragraph of the grievance. (ECF No. 32-3, PageID.282.) The PRLA does not impose a "name all defendants requirement" when prisoners file their initial grievances. *Jones*, 549 U.S. at 217. However, a review of the grievance shows that the allegations focused on the actions of the named Defendants so much that it deprived MDOC the opportunity to redress any complaints regarding RNs Haske and Damron.

In summary, the undersigned concludes that there is a genuine issue of material fact as to whether the grievance process was available Blau for his claims against RN Covert. The undersigned, however, also concludes that Blau failed to

show a genuine issue of material fact as to whether Blau properly exhausted his claims against RNs Haske and Damron because he failed to name them.

### C. *Grievance JCF-1607-1360-12d2*

There is no record of this grievance apart from Blau discussing it in his response to the Defendants' motion for summary judgment. (ECF No. 35, PageID.324.) Blau says that the grievance memorializes his complaint regarding the delay suffered between undergoing the stress test evaluation to being treated by a cardiologist and says that the grievance was denied on the merits through Step III. (*Id.*) Defendants neither identify this grievance nor did they address Blau's argument. (*See* ECF No. 32, 40.) Despite Defendants failing to mention or respond to the grievance, Department Analyst Carolyn Nelson swears that the Step III Grievance Report attached to Defendants' brief is a true and accurate record of all the grievances filed and pursued through Step III by Blau. (ECF No. 32-3, PageID.272.) As a result, Nelson's statement and the Step III Grievance Report are the only evidence in the record regarding whether this grievance was filed or pursued through Step III.

The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co.*, 421 F.3d at 436 (quoting *Anderson*, 477 U.S. at 251-52). Here, the only evidence in the record shows that grievance **JCF-1607-1360-12d2** was

not pursued through Step III. As such, the undersigned concludes that the grievance and the claims within it were not properly exhausted.

### D. *Grievance URF-1608-2850-12d3*

For the following reason, the undersigned concludes that there is a genuine issue of fact as to whether the grievance process was available to Blau regarding grievance **URF-1608-2850-12d3**. Defendants failed to identify this grievance **URF-1608-2850-12d3** in their motion for summary judgment and in their reply to Blau's argument regarding it. Despite this, the sworn statement of Department Analyst Nelson and the Step III Grievance Report shows that grievance **URF-1608-2850-12d3** is not among the list of grievances that were exhausted through Step III. (*See* ECF No. 32-3.)

Blau contends that the grievance process was unavailable to him for two reasons. (ECF No. 35, PageID.324-328.) First, he argues that URF's prison officials' failed to respond to his requests for the Step II appeal form is indicative of their unspoken policy to make the grievance procedure unavailable to prisoners – like URF officials had with Blau's earlier grievances. (*Id.*, PageID.325-326.) Second, he argues that this grievance was never rejected for procedural issues like earlier grievances were. (*Id.*, PageID.326-328.)

In support of Blau's first argument, he attaches (1) the grievance form for **URF-1608-2850-12d3**, (2) the Step I response, (3) Blau's two letters to the URF grievance coordinator requesting a Step II appeal form, (4) the Step III appeal that includes a note that he was never supplied the Step II appeal form despite prior

33

letters, (4) MDOC's letter that returns the Step III appeal materials to Blau, and (5) Blau's declarations regarding his requests that he receive the Step II appeal form and his submission of the Step III appeal form.  (ECF No. 35-7; ECF No. 35-1, PageID.334.)

After a review of all pleadings and associated documents, the undersigned respectfully recommends that the Court find that there is a genuine issue of material fact regarding whether the grievance process was available to Blau regarding grievance **URF-1608-2850-12d3**.

## IX.    NP Wilson's Motion to Strike Blau's Unauthorized Sur-Reply

In addition to her motion for summary judgment, NP Wilson moves to strike Blau's unauthorized sur-reply (ECF No. 42).  (ECF No. 43.)  NP Wilson argues that the sur-reply should be struck because it violates the Court's Local Rule 7.2(c).  In response, Blau states that NP Wilson's motion is simply an attempt to "bully" him and to hide universally known and undisputed medical information."  (ECF No. 45, PageID.525.)

The undersigned recommends that the Court grant NP Wilson's motion to strike Blau's unauthorized sur-reply for two reasons.  First, Blau failed to request the Court's permission to file additional briefing for dispositive motions.  The local rule states that additional briefing is at the discretion of the Court.  W.D. Mich. LCivR 7.2(c).  Because Blau failed to seek permission to file his sur-reply, the sur-reply should be struck.  Second, in the sur-reply, Blau reasserted his request for the Court to take judicial notice of testimonial opinions about anginas.  For the same reasons

34

discussed in Section I, the Court cannot take judicial notice of Blau's requested materials.  As such, the sur-reply serves no purpose in the progression of this matter and should be struck.

## X.    Recommendation

The undersigned respectfully recommends that this Court (1) grant NP Wilson's summary judgment motion because there is no genuine issue of material fact regarding Blau's Eighth Amendment deliberate indifference claim,[11] (2) deny Defendants' summary judgment motion as to RN Covert and grant the motion as to RNs Haske and Damron, (3) grant NP Wilson's motion to strike Blau's unauthorized sur-reply, (4) dismiss Blau's claim against NP Wilson with prejudice, and (5) dismiss Blau's claims against RNs Haske and Damron without prejudice.  If the Court accepts this recommendation, only Blau's Eighth Amendment deliberate indifference claim against RN Covert will remain.


Dated:  March 5, 2020                              /s/ *Maarten Vermaat*
                                                  MAARTEN VERMAAT
                                                  U. S. MAGISTRATE JUDGE


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).

---

[11]    As mentioned before, if the court were to deny Wilson's motion for summary judgment, the undersigned would take up NP Wilson's exhaustion argument.