UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JAMES BLAU #214995,

    Plaintiff,

v.

GERALD COVERT, et al.,

    Defendants.

_____/

Case No. 2:18-cv-00127

Hon. Gordon J. Quist
U.S. District Judge

## REPORT AND RECOMMENDATION

### I. Introduction

This Report and Recommendation (R&R) addresses the summary judgment motion filed by Defendants Covert, Haske, and Damron. (ECF No. 75.)

The Plaintiff in this case – former state prisoner James E. Blau – filed this civil rights action pursuant to 42 U.S.C. § 1983 on August 8, 2018. Blau says that while he was confined at Chippewa Correctional Facility (URF) in 2016, the Defendants were deliberately indifferent to his serious medical condition, resulting in a failure to timely diagnose him with heart disease in violation of the Eighth Amendment.

The remaining Defendants are Registered Nurse (RN) Gerald Covert, RN Tiffany Haske, and RN Joseph Damron. On September 9, 2020, the Court granted Defendant Nurse Practitioner (NP) Wilson's motion for summary judgment concluding that she was not deliberately indifferent to Blau's medical needs. (ECF No. 54, PageID.590-591.) The Court found that Blau disagreed with his medical provider's treatment and that his disagreement was not enough to establish a

genuine issue of fact. (*Id.*) In the same order, the Court denied a motion for summary judgment based on Blau's alleged failure to exhaust his administrative remedies. (*Id.*, PageID.593.)

Defendants RN Covert, RN Damron, and RN Haske argue that they are entitled to summary judgment because no genuine issue of fact exists to support Blau's Eighth Amendment claims against them. Defendants note that as registered nurses, they had limited involvement in Blau's diagnoses and treatment. The nurses documented Blau's concerns and referred him to medical providers – nurse practitioners – for further evaluation. After Blau was treated at the War Memorial Hospital for his complaints of chest pain and diagnosed with noncardiac chest pain, the RNs had very little involvement in Blau's post-diagnosis treatment and no documented involvement in Blau's medical care after Blau was examined by NP Wilson on April 12, 2016.

In the opinion of the undersigned, no genuine issue of material fact exists with respect to Blau's deliberate indifference claim against RNs Covert, Damron, and Haske. Thus, it is respectfully recommended that the Court grant their motion for summary judgment and dismiss this case.

**II. Factual Allegations**

Blau's Eighth Amendment deliberate indifference claims flow from his perceived lack of medical treatment regarding cardiac issues at URF in 2016. Below

is a table[1] that summarizes Blau's factual allegations relevant to his remaining claims.

| Claim # | Defendant | Claim | Date or Date Range of Incident(s) | Factual Allegation |
|---|---|---|---|---|
| 1 | Gerald Covert | 8th Amendment Deliberate Indifference | 3/10/2016 | During a physical examination, Covert allegedly dismissed Blau's symptoms and stated that the symptoms would likely go away if Blau would stop crying about them.  Essentially, Covert allegedly incorrectly underreported Blau's symptoms.  (ECF No. 1, PageID.4.) |
| 2 | Gerald Covert | 8th Amendment Deliberate Indifference | 3/15/2016 | Despite not being called out, Blau approached the med-line window to complain about his severe chest pain. Covert allegedly appeared at the window, stated that he did not care if Blau had a heart attack, ordered Blau away from the window, and failed to report Blau's symptoms to a doctor.  (ECF No. 1, PageID.4-5.) |
| 3 | Gerald Covert | 8th Amendment Deliberate Indifference | 4/8/2016 | During Blau's annual health screening, Covert again allegedly underreported Blau's symptoms that suggested possible cardiac problems.  (ECF No. 1, PageID.5.) |
| 4 | Gerald Covert | 8th Amendment Deliberate Indifference | 4/11/2016 | Two nurses admitted Blau into health services because Blau complained about severe chest pain.  When those nurses asked their supervisor, Covert, about what to do, Covert cursed at Blau and kicked him out of the health services without informing a doctor. (ECF No. 1, PageID.5.) |
| 5 | Gerald Covert | 8th Amendment Deliberate Indifference | 4/13/2016 | Covert called-out Blau to discuss Blau's grievance regarding a lack of medical care. Covert ended the meeting by ordering Blau away and writing Blau a major misconduct ticket for insolence. (ECF No. 1, PageID.6.) |
| 6 | Tiffany Haske | 8th Amendment Deliberate Indifference | 3/16/2016 | During a phone conversation, Haske allegedly asked Blau to come to health services after hearing about the chest pains that he was suffering from. When he arrived, Haske allegedly refused to see him or report his symptoms. (ECF No. 1, PageID.6.) |

---

[1] This claims table utilizes the same claims numbers as in the earlier report and recommendation.  (*See* ECF No. 51, PageID.58-39.)

| Claim # | Defendant | Claim | Date or Date Range of Incident(s) | Factual Allegation |
|---|---|---|---|---|
| 7 | Tiffany Haske | 8th Amendment Deliberate Indifference | 3/17/2016 | Haske examined Blau and recorded Blau's symptoms. But Blau alleges that Haske did not record the severity of the symptoms and failed to inform a doctor. (ECF No. 1, PageID.6-7.) |
| 8 | Joseph Damron | 8th Amendment Deliberate Indifference | 3/15/2016 | Damron spoke with Blau about Blau's symptoms at the med-line window, which was interrupted when Covert ordered Blau away from the window. Damron failed to report Blau's symptoms. (ECF No. 1, PageID.7.) |
| 9 | Joseph Damron | 8th Amendment Deliberate Indifference | 3/31/2016 | The day after writing a grievance regarding a lack of medical care, Damron examined Blau. Damron allegedly under-reported Blau's symptoms, ordered Blau away until the nurse practitioner was ready to see Blau, and never informed a doctor about Blau's symptoms. (ECF No. 1, PageID.7.) |
| 10 | Joseph Damron | 8th Amendment Deliberate Indifference | 4/2/2016 | During a post-hospital follow-up, Damron again under-reported Blau's symptoms and refused to notify a doctor. (ECF No. 1, PageID.8.) |

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits,

4

and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

## IV. Eighth Amendment

Blau asserts that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as the failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* "[A]n inmate who complains that ***delay in medical treatment*** rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison*

5

*Cty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001) (emphasis added, citations omitted). The Court of Appeals elaborated on the holding in *Napier* in its 2004 ruling in *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890 (6th Cir. 2004), where the Court stated the following:

> *Napier* does not apply to medical care claims where facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers. *Napier* applies where the plaintiff's "deliberate indifference" claim is based on the prison's ***failure to treat a condition adequately***, or where the prisoner's affliction is seemingly minor or non-obvious. In such circumstances, medical proof is necessary to assess whether the delay caused a serious medical injury.

*Blackmore*, 390 F.3d at 898 (emphasis added). Thus, *Napier* and *Blackmore* provide a framework for assessing a claim of delayed or inadequate care for a non-obvious condition: A plaintiff making this type of claim must place verifying medical evidence in the record to show the detrimental effect of the delayed or inadequate treatment.

However, the objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Id.* at 899.

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. The subjective component was recently summarized in *Rhinehart v. Scutt*, 894 F.3d 721 (6th Cir. 2018). The court of appeals stated the following:

> A doctor's errors in medical judgment or other negligent behavior do not suffice to establish deliberate indifference. Instead, the plaintiff must show that each defendant acted with a mental state "equivalent to criminal recklessness." This showing requires proof that each defendant "subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk" by failing to take reasonable measures to abate it.
>
> A plaintiff may rely on circumstantial evidence to prove subjective recklessness: A jury is entitled to "conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." And if a risk is well-documented and circumstances suggest that the official has been exposed to information so that he must have known of the risk, the evidence is sufficient for a jury to find that the official had knowledge.
>
> But the plaintiff also must present enough evidence from which a jury could conclude that each defendant "so recklessly ignored the risk that he was deliberately indifferent to it." A doctor is not liable under the Eighth Amendment if he or she provides reasonable treatment, even if the outcome of the treatment is insufficient or even harmful. A doctor, after all, is bound by the Hippocratic Oath, not applicable to the jailor, and the physician's job is to treat illness, not punish the prisoner. Accordingly, when a claimant challenges the adequacy of an inmate's treatment, "this Court is deferential to the judgments of medical professionals." That is not to say that a doctor is immune from a deliberate-indifference claim simply because he provided "some treatment for the inmates' medical needs." But there is a high bar that a plaintiff must clear to prove an Eighth Amendment medical-needs claim: The doctor must have "*consciously* expos[ed] the patient to an *excessive* risk of *serious* harm."

*Id.* at 738–39 (6th Cir. 2018) (internal citations omitted).

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted).

Differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort

8

law." *Id.*; *Rouster v. Saginaw Cty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell* 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

Blau argues that RNs Covert, Haske, and Damron, should have discovered what the hospital emergency room doctor and Nurse Practitioner Wilson, who both examined Blau did not discover – that Blau's chest pain was a symptom of a cardiac issue. As previously expressed, the undersigned is sympathetic to Blau's circumstances and medical condition. (ECF No. 51 (Report and Recommendation (R&R)).) Ultimately, Blau underwent surgery and had a chest stent inserted. Blau suffered with pain and repeatedly sought treatment for his chest pain before he was diagnosed. (*See Id.*, PageID.550-52 (summary of medical care from March to May 2016)) As the Court previously explained, despite these frustrations, Blau's claim fails to rise to the level of an Eighth Amendment violation. (ECF No. 54 (Order

9

Adopting in Part and Rejecting in Part R&R).) This is especially applicable with respect to the allegations Blau asserts against the three registered nurses, who are neither medical doctors, nurse practitioners, nor medical providers who diagnose patients.

The medical records support the conclusion that RNs Covert, Haske, and Damron were not deliberately indifferent to a serious medical need that Blau was experiencing. On March 10, 2016, Blau was first examined by RN Covert for complaints of shortness of breath on the slightest exertion or exercise and burning in the chest. (ECF No. 76-2, PageID.642.) Blau denied chest pain on exam, was stable, and had normal blood pressure. (*Id.*) RN Covert referred Blau to a medical provider[2]. (*Id.*, at PageID.643.)

On March 15, 2016, Blau approached RN Damron at the med-line window and asked when he would see the medical provider because he is experiencing shortness of breath after only a few laps around the track. (*Id.*, PageID.644.) Blau denied chest pain at that time and did not want to be seen by an RN. (*Id.*)

On March 16, 2016, Blau was scheduled to see RN Haske, but left before RN Haske was free to see him after he had waited 18 minutes. (*Id.*, PageID.646.) RN Haske rescheduled the appointment to the next day. (*Id.*) The next day, Blau attended his appointment with RN Haske. (*Id.*, PageID.647-648.) Blau's vital signs were normal, and his heart sounded normal. (*Id.*) RN Haske advised Blau to

---

[2] The MDOC refers to "Medical Provider" (MP) as a nurse practitioner or higher. (ECF No. 76-2, PageID.703.) An RN is not a medical provider.

drink at least 8 glasses of water per day, rest and not engage in strenuous activities, and to contact healthcare if his symptoms persisted. (*Id.*)

On March 31, 2016, RN Damron examined Blau who complained of burning pain in his chest and shortness of breath after walking laps around the track or to and from the chow hall. (*Id.*, PageID.650.) Blau's vital signs and blood pressure were normal. (*Id.*) RN Damron advised Blau to rest, not engage in sports, weightlifting, or walking on the track, and to take Tylenol as prescribed. (*Id.*) Blau was on the referral list to see a medical provider. (*Id.*)

On April 1, 2016, Blau's blood pressure was elevated, and he complained that his chest pain worsened over the last two days. (*Id.*, PageID.652.) Blau was given Nitro, Zantac, and Mylanta. Nurse Practitioner Weist instructed RN MacDowell to send Blau to War Memorial Hospital if his pain did not subside. (*Id.*, PageID.653-655.)

Blau was then taken to the hospital. (*Id.*) On April 2, 2016, War Memorial Hospital physician, Dr. Prashan Gunasekera examined Blau. (*Id.* PageID.658-662.) Blau described burning pain in his midsection and reported midsternal chest pain over the past 2½ months. (*Id.*) Dr. Gunasekera noted that Blau was in no apparent distress and that his cardiovascular examination was normal. (*Id.*, PageID.659.) Dr. Gunasekera ordered laboratory tests, an EKG, and imaging, which showed no abnormalities. (*Id.*, PageID.660-661.) Blau was given a breathing treatment to see if it helped with pain, but Dr. Gunasekera noted that it did not help. (*Id.*) Blau was given a "GI cocktail" which improved his symptoms a little. (*Id.*) Dr.

11

Gunasekera found Blau's symptoms "consistent with a noncardiac cause of chest pain," but felt that Blau needed a stress test in an outpatient setting and made that recommendation. (*Id.,* PageID.661-662.)

The next day, April 3, 2016, RN Damron conducted a post emergency room follow-up examination of Blau. (*Id.*, PageID.664.) Blau stated that he felt better and denied chest pain and was in no distress. (*Id.*) Blau was scheduled to see a medical provider. (*Id.*, PageID.665.) On April 4, 2016, NP Buchanan completed a chart update and noted that Blau was diagnosed at the hospital emergency room with noncardiac chest pain, with a normal EKG, and negative for troponin.[3] (*Id.*, PageID.666.)

On April 8, 2016, RN Covert saw Blau for an annual nurse-well-encounter. (*Id.*, PageID.667.) Blau reported recurrent chest pain and that he was recently seen at the hospital emergency room for chest pain. (*Id.*)

RN Walker examined Blau on April 11, 2016. (*Id.*, PageID.672-673.) Blau reported increasing chest pain with ambulation but decreasing after rest with dizziness. (*Id.*, PageID.673.) Blau wanted to know when he would be seen by a medical provider. (*Id.*) RN Walker noted that Blau was scheduled to see the medical provider. (*Id.*)

Blau visited health care on April 12, 2016. (*Id.*, PageID.675-680.) RN Haske recorded Blau's vital signs and NP Wilson examined Blau. (*Id.*) NP Wilson

---

[3] Troponin is a protein that is released into the bloodstream when heart muscles are damaged. https://www.healthline.com/health/troponin-levels

prescribed Zantac and Lactaid for Blau's chest pain. (*Id.*) NP Wilson ordered laboratory tests, a chest x-ray, and an EKG and set a follow-up visit. (*Id.*) Dr. Henderson, reviewed Blau's chest x-ray and found no active pulmonary disease. (*Id.*, PageID.681.) Blau's EKG showed a "ST\T Wave Abnormality: T wave inversion in III an AVF". (*Id.*, PageID.691.) NP Wilson requested that Blau receive a cardiolyte stress test. (*Id.*, PageID.695.)

On July 19, 2016, Blau underwent a procedure that placed a stent in the middle right coronary artery of his heart. (ECF No. 1, PageID.15-19.)

The medical records do not establish that RNs Covert, Haske, and Damron were deliberately indifferent to his medical needs. As RNs, Covert, Haske, and Damron could not order cardiac tests such as EKGs or stress tests. (ECF No. 76-3, PageID.703 (affidavit of RN Covert); ECF No. 76-3, PageID.707 (affidavit of RN Haske).) The RNs had some contact with Blau before Blau was taken to War Memorial Hospital where Dr. Gunasekera diagnosed noncardiac chest pain. Blau cannot show that prior to his visit to War Memorial Hospital that the RNs took any action that could rise to the level of deliberate indifference in violation of the Eighth Amendment.

The medical records show that Defendant RNs each saw Blau on one more occasion after Blau returned from War Memorial Hospital with the diagnosis of noncardiac chest pain. RN Damron saw Blau the next day, April 3, 2016, and recorded Blau's emergency room visit and that Blau stated he felt better. (*Id.*, PageID.664-665.) RN Damron noted that Blau was scheduled to see a medical

13

provider. (*Id.*) RN Covert saw Blau for his annual nurse well visit check on April 8, 2016, and that visit was unremarkable. (*Id.*, PageID.667.) When Blau was examined by NP Wilson on April 12, 2016, RN Haske recorded Blau's vital signs. (*Id.*, PageID.675.)

In the opinion of the undersigned, Blau cannot establish that RN Covert, Damron, and Haske's limited involvement in his medical care after he returned from War Memorial Hospital rose to the level of an Eighth Amendment violation. As the Court has already concluded NP Wilson – who examined Blau after each of the Defendant RNs on April 12, 2016, and continued to treat him after that date – was not deliberately indifferent to Blau's serious medical needs. (ECF No. 54, PageID.590-591.) Similarly, it is the opinion of the undersigned, that Blau has failed to establish a genuine issue of material fact with regard to whether Defendants Covert, Damron, and Haske acted with deliberate indifference to Blau's serious medical needs.

Blau makes several conclusory assertions that are unsupported by any evidence. Blau asserts in his response brief that Defendants falsified the medical records to make it look like they took some action to protect themselves from liability from a future lawsuit. (ECF No. 83, PageID.730.) A review of the records, as shown above, establishes that the RNs documented Blau's complaints of chest pain. Blau's assertion defies logic. Blau fails to indicate how Defendants falsified the documents, or how every nurse, nurse practitioner, and doctor who provided him with medical care after RNs Covert, Damron, and Haske involvement, were engaged in a

14

conspiratorial plot to deny Blau medical care that he truly needed. Moreover, the records indicate that Dr. Gunasekera – not the Defendant RNs – diagnosed Blau with noncardiac chest pain; and Dr. Gunasekera conducted laboratory tests, took imaging, and an EKG, which were all normal at the time Blau visited the hospital and after he was seen in the prison by the Defendant RNs for complaints of chest pain.

Also, as noted above, NP Wilson prescribed antacids and Zantac and did not, at least initially, during the same period of time that the RNs saw Blau, diagnose a more serious condition. There simply exists no evidence to support Blau's claim that the medical records were falsified. Where "the parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Blau has failed to support his self-serving statements or rebut the record by submitting contrary evidence.

Blau says that he submitted kites nearly every day for five months but was not seen by health care. (ECF No. 83, PageID.723.) Again, Blau makes no effort to support this claim by submitting copies of the kites he allegedly sent that went unanswered by Defendants Covert, Damron, and Haske. The record does not contain those kites.

Blau argues that if the Court is inclined to grant this motion, he should be given the opportunity to first retain a medical expert to provide standard of care testimony based upon the recent ruling of *Phillips v. Tangilag*, 14 F.4th 524 (6th Cir.

15

2021). (ECF No. 83, PageID.736.) In *Phillips* the Sixth Circuit stated that prisoners must show more than inadequate care to support the objective element of their claim: "to prove grossly inadequate care . . . courts generally require them to introduce medical evidence, typically in form of expert testimony." *Phillips*, at 535. The Court explained that it would be odd to allow a prisoner to prove an Eighth Amendment claim more easily than an ordinary individual could prove a medical malpractice claim. *Id* (emphasis added).

The lack of expert testimony is not a factor in this case. Blau has failed to show that RN Covert, Damron, or Haske acted with deliberate indifference toward his medical needs in any manner after he returned from the War Memorial Hospital with a diagnosis of noncardiac chest pain. Blau argues that he should have received a stress test after he returned from the hospital. (ECF No. 83, PageID.736.) The RNs did not have authority to order a stress test and had limited involvement in Blau's post hospital emergency care. (ECF No. 76-3, PageID.703 (affidavit of RN Covert); ECF No. 76-3, PageID.707 (affidavit of RN Haske).) And this Court already addressed this argument as it related to NP Wilson by stating "Should Wilson have ordered a stress test earlier? Maybe. The ER doctor did recommend—not order—a stress test. But the ER doctor also wrote that his findings were 'consistent with a noncardiac cause of chest pain.'" (ECF No. 54, PageID.591.)

Finally, the Court emphasizes that stating a negligence or medical malpractice claim is not enough to support a deliberate indifference claim. *Estelle*, 429 U.S. at 105. A negligence or medical malpractice claim does not rise to an Eighth

16

Amendment violation merely because the plaintiff was a prisoner. *Id.* In the opinion of the undersigned, Blau has failed to present evidence establishing a genuine issue of material fact with regard to the issue of whether the Defendant RNs were deliberately indifferent to his medical needs.[4]

## V. Qualified Immunity

Defendants alternatively move for qualified immunity from liability. "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The analysis entails a two-step inquiry. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). First, the court must "determine if the facts alleged make out a violation of a constitutional right." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (1982)). Second, the

---

[4] Finally, Blau's assertion that Covert wrote him a misconduct ticket for insolence on April 13, 2016, cannot support an Eighth Amendment deliberate indifference claim against RN Covert. To the extent that Blau asserts that the misconduct was false or improper, his claim fails to implicate Eighth Amendment concerns.

17

court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232). A court may address these steps in any order. *Id.* (citing *Pearson*, 555 U.S. at 236). A government official is entitled to qualified immunity if either step of the analysis is not satisfied. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first step of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The court considers the state of the law at the second step. As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). As explained by the Supreme Court:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam), which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority,'" *al–Kidd, supra*, at 741–742, 131 S.Ct. 2074 (quoting *Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *See Reichle*, 566 U.S., at 666, 132 S.Ct. 2088. Otherwise, the rule is not one that "every reasonable

> official" would know. *Id.*, at 664, 132 S.Ct. 2088 (internal quotation marks omitted).
>
> The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This requires a high "degree of specificity." *Mullenix v. Luna*, 577 U.S. ––––, ––––, 136 S.Ct. 305, 309, 193 L.Ed.2d 255 (2015) (per curiam). We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff*, *supra*, at 2023 (internal quotation marks and citation omitted). A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." *Anderson*, *supra*, at 641, 107 S.Ct. 3034. In the context of a warrantless arrest, the rule must obviously resolve "whether 'the circumstances with which [the particular officer] was confronted ... constitute[d] probable cause.'" *Mullenix*, *supra*, at 309 (quoting *Anderson*, *supra*, at 640–641, 107 S.Ct. 3034; some alterations in original).

*District of Columbia v. Wesby*, 138 S. Ct. 577, 589–90 (2018). For the reasons explained above, the undersigned concludes that Blau has failed to create a genuine issue of material fact with respect to his deliberate indifference claim. For these same reasons, Defendants are entitled to qualified immunity.[5]

## VI. Recommendation

In the opinion of the undersigned, no genuine issue of material fact exists with respect to Blau's deliberate indifference claim against RNs Covert, Damron, and

---

[5] If no constitutional right is violated there is no need for a further inquiry concerning qualified immunity. *Bethel v. Jenkins*, 988 F.3d 931, 945 (6th Cir. 2021).

19

Haske. Thus, it is respectfully recommended that the Court grant their motion for summary judgment and dismiss this case.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:  August 3, 2022                              /s/ *Maarten Vermaat*
                                                              MAARTEN VERMAAT
                                                              U.S. MAGISTRATE JUDGE